IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MITCHELL DEMARCUS HALL,<br><br>Defendant. | No. CR15-0062<br><br>REPORT AND RECOMMENDATION |

TABLE OF CONTENTS

I.    INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . 2

III.  RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.   DISCUSSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      A.   Applicable Law  . . . . . . . . . . . . . . . . . . . . . . . . . 4
      B.   Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

V.    RECOMMENDATION  . . . . . . . . . . . . . . . . . . . . . . . 12

I. INTRODUCTION

On the 12th day of August 2015, this matter came on for hearing on the Motion to Suppress (docket number 7) filed by the Defendant on July 31, 2015. The Government was represented by Assistant United States Attorney Anthony Morfitt. Defendant Mitchell Demarcus Hall appeared in person and was represented by his attorney, Jill M. Johnston.

## II. PROCEDURAL HISTORY

On July 14, 2015, Defendant Mitchell Demarcus Hall was charged by Indictment with possession of a firearm and ammunition by a felon and as an unlawful user of marijuana. Defendant appeared on July 16 and entered a plea of not guilty. Trial was scheduled before Chief Judge Linda R. Reade on September 14, 2015.

On July 31, Defendant timely filed the instant motion to suppress. The Government filed its resistance on August 7. Following the suppression hearing on August 12, Defendant gave notice of his intent to enter a conditional plea of guilty. A plea change hearing was held on August 27, and the trial was cancelled.

## III. RELEVANT FACTS

At approximately 2:30 p.m. on May 23, 2015, a call was received on the 911 emergency line regarding a man with a gun.[1] The caller reported a "young man walking on 16th and 4th with a gun." The caller reported she wanted to remain anonymous. According to the caller, the subject was getting into a black Ford station wagon, and was "running in and out of a house." The subject was described as "light-skinned with dreads." When asked what the subject was wearing, the caller responded: "I don't know, but I know he usually like he had a gun in his pocket." When the dispatcher asked the caller which way the subject was walking, the caller became annoyed and said she "must have made a mistake" by calling. She added that "somebody will be dead." The caller became agitated, stated again that she wanted to be anonymous. When the dispatcher asked do you still see him, the caller hung up. The call lasted for one minute thirty seconds.

Officer Antoine Smith of the Cedar Rapids Police Department testified that he was approximately two blocks away from the scene when a call came through from the dispatcher, reporting a light-skinned black male with dreads driving a black station wagon,

---

[1] A recording of the 911 call was introduced as Government's Exhibit 1.

and who was in possession of a gun. According to Smith, he saw three black station wagons as he proceeded to the scene. The first station wagon was parked and unoccupied. The second station wagon was going north on 15th Street with multiple occupants, none of whom matched the description given in the 911 call. When Smith stopped at a 4-way stop at the corner of 15th Street and Bever Avenue, however, he saw a black station wagon being driven by a subject matching the description given in the 911 call. Smith turned to follow the subject and then initiated a traffic stop.[2]

After the vehicle was stopped, Officer Smith identified Defendant as the driver and sole occupant of the vehicle.[3] According to Smith, Defendant could not provide a current driver's license, and instead produced either an Iowa or Illinois identification card. In addition, Defendant could not produce proof of insurance, or name his insurance company. Defendant was then informed he would be given a citation and his car would be impounded. Other officers arriving on the scene reported a smell of marijuana coming from the car. Upon a search of the car, officers found 11 bags of marijuana, a loaded .32 caliber Smith and Wesson handgun, and a replica handgun. Defendant denied that the marijuana and guns belonged to him, but conceded that he smoked marijuana and his fingerprints could be found on the marijuana container.

---

[2] At the hearing, Officer Smith testified that the subject vehicle was facing opposite him at the 4-way stop. After the hearing, however, the Court was informed that the subject vehicle was to Smith's right, not across the intersection from him, and Smith simply took a left turn to start following the vehicle.

[3] At the hearing, Officer Smith testified that he ran the license plate of the subject vehicle before he pulled it over, and learned that the registered owner did not have a valid driver's license. After the hearing, however, the Court was informed that Smith was mistaken in his testimony. That is, Smith did not run the plate or learn of the owner's status until *after* the vehicle was stopped.

## IV. DISCUSSION

In his motion to suppress, Defendant argues the vehicle stop was violative of the Fourth Amendment. That is, Defendant asserts the anonymous 911 call did not provide the requisite probable cause or reasonable suspicion necessary to justify the stop. The Government argues the vehicle stop was justified by the information received in the 911 call.[4]

### A. Applicable Law

The law regarding traffic stops is well-established. The Fourth Amendment prohibits "unreasonable searches and seizures." "A traffic stop constitutes a seizure of a vehicle's occupants, including any passengers." *United States v. Hollins*, 685 F.3d 703, 705 (8th Cir. 2012). Accordingly, a traffic stop "must be supported by reasonable suspicion or probable cause." *Id.* at 706 (quoting *United States v. Houston*, 548 F.3d 1151, 1153 (8th Cir. 2008)). *See also United States v. Corrales-Portillo*, 779 F.3d 823, 829 (8th Cir. 2015) ("The Fourth Amendment is satisfied if the stop is supported by reasonable suspicion to believe that criminal activity 'may be afoot.'"). "The 'reasonable suspicion' necessary to justify such a stop 'is dependent upon both the content of information possessed by police and its degree of reliability.'" *Navarette v. California*, \_\_\_\_ U.S. \_\_\_\_, 134 S. Ct. 1683, 1687 (2014). The level of suspicion necessary to conduct a traffic stop is "'considerably less than proof of wrongdoing by a preponderance of the evidence' and 'obviously less' than is necessary for probable cause." *Id.* (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

---

[4] At the hearing, the Government briefly argued that the vehicle stop was also justified by information obtained by Officer Smith regarding the driving status of the registered owner of the vehicle. Following the hearing, however, the Government conceded that this information was not obtained by Smith until *after* the stop and, therefore, cannot be used to justify the stop.

4

The Supreme Court recently addressed the issue of whether an anonymous 911 call provided reasonable suspicion to justify a traffic stop in *Navarette, supra*. In a 5-4 opinion, the Court concluded that the indicia of reliability in that 911 call was "sufficient to provide the officer with reasonable suspicion that the driver of the reported vehicle had run another vehicle off the road." 134 S. Ct. at 1692. In reaching that conclusion, the Court discussed at length two previous cases in which it addressed reasonable suspicion based on anonymous calls: *Alabama v. White*, 496 U.S. 325 (1990), and *Florida v. J.L.*, 529 U.S. 266 (2000). A resolution of the motion in this case requires close examination of *Navarette*, *White*, and *J.L.*

In *Alabama v. White, supra*, authorities received a telephone call from an anonymous person "stating that Vanessa White would be leaving 235-C Lynwood Terrace Apartments at a particular time in a brown Plymouth station wagon with the right taillight lens broken, that she would be going to Dobey's Motel, and that she would be in possession of about an ounce of cocaine inside a brown attache case." 496 U.S. at 327. Officers proceeded to Lynwood Terrace Apartments, where they observed a station wagon meeting the description given by the caller in the parking lot in front of the 235 building. Officers observed a woman leave the 235 building (with nothing in her hands) and enter the station wagon. The officers then followed the vehicle as it drove directly toward Dobey's Motel. The vehicle was stopped just short of Dobey's Motel. *Id.* During a consent search of the vehicle, officers found a locked brown attache case containing marijuana. A small amount of cocaine was found in White's purse.

In a 6-3 opinion, the Court concluded that the anonymous tip "exhibited sufficient indicia of reliability to justify the investigatory stop." *Id.* at 332. The Court noted that "if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." *Id.* at 330. The Court found it important that the details provided by the caller

were not limited to "facts and conditions existing at the time of the tip," but also predicted the subject's "future actions." *Id.* at 332.

> The fact that the officers found a car precisely matching the caller's description in front of the 235 building is an example of the former. Anyone could have "predicted" that fact because it was a condition presumably existing at the time of the call. What was important was the caller's ability to predict respondent's *future behavior*, because it demonstrated inside information — a special familiarity with respondent's affairs.

*White*, 496 U.S. at 332 (italics in original).[5]

In *Florida v. J.L.*, *supra*, authorities received an anonymous call that "a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." 529 U.S. at 268. Two officers responded to the scene some time later and saw three black males "just hanging out there." *Id.* One of the men (J.L.) was wearing a plaid shirt. "The officers did not see a firearm, and J.L. made no threatening or otherwise unusual movements." *Id.* One of the officers approached J.L., told him to put his hands up, frisked him, and seized a gun from J.L.'s pocket.

In a unanimous decision, the Court concluded that an anonymous tip lacking indicia of reliability "does not justify a stop and frisk whenever and however it alleges the illegal possession of a firearm." *Id.* at 274. The Court recognized that "there are situations in which an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.'" *Id.* at 270 (quoting *White*, 496 U.S. at 329). The Court concluded, however, that the tip in *J.L.* lacked the "moderate" indicia of reliability found in *White* — *i.e.*, the caller's accurate prediction of the subject's future movements — which were "essential" to the Court's decision in *White*. *Id.* at 271.

---

[5] The majority conceded that it was a "close case." *White*, 496 U.S. at 332.

6

> The anonymous call concerning J.L. provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility. That the allegation about the gun turned out to be correct does not suggest that the officers, prior to the frisks, had a reasonable basis for suspecting J.L. of engaging in unlawful conduct: The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search. All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L. If *White* was a close case on the reliability of anonymous tips, this one surely falls on the other side of the line.

*Florida v. J.L.*, 529 U.S. at 271. It should be noted that the Court also rejected Florida's argument that there should be a "firearm exception" to standard *Terry* analysis.[6] *Id.* at 272.

In *Navarette v. California, supra*, an anonymous 911 caller reported a vehicle "as having run her off the road."[7] The caller identified the make, model, and color of the offending vehicle, together with its license plate. The caller also identified the pickup truck's location and direction of travel. A highway patrolman spotted the truck a short

---

[6] In its brief, the Government argues that "less corroboration" is required when the tip alleges that a suspect is armed with a firearm, citing *United States v. Wheat*, 278 F.3d 722, 727 (8th Cir. 2001). That is *not* the holding in *Wheat*. Rather, *Wheat* contains a lengthy exposition of the law in this area. The language cited by the Government in its brief is simply a description of what "a number of state supreme and intermediate appellate courts held." *Id.* Immediately following that review, the Eighth Circuit noted that "[l]ast year, however, the Supreme Court appeared to curtail the argument that a purported threat of imminent danger necessarily lessens the Government's burden in an analysis of the reliability of an anonymous tip," citing *Florida v. J.L. Id.* at 728.

[7] There was apparently some question as to whether the caller was actually anonymous, but both the majority and the dissent analyzed the case as an anonymous caller. *Navarette*, 134 S. Ct. at 1687, fn.1.

7

time later and pulled it over. According to the dissent, the officers followed the truck for five minutes before pulling it over, and during that time the defendant's "driving was irreproachable." *Id.* at 1696.

The *Navarette* court acknowledged that "an anonymous tip *alone* seldom demonstrates the informant's basis of knowledge or veracity." *Id.* at 1688 (quoting *White*, 496 U.S. at 329) (italics in original). An anonymous tipster's veracity is "by hypothesis largely unknown, and unknowable." *Id.* "But under appropriate circumstances, an anonymous tip can demonstrate 'sufficient indicia of reliability to provide reasonable suspicion to make an investigatory stop." *Id.*

In concluding the information provided in the *Navarette* 911 call established reasonable suspicion to believe the subject was driving drunk, the majority focused on three things: (1) "the caller necessarily claimed eyewitness knowledge of the alleged dangerous driving," (2) the timeline of events suggested the caller was making a "contemporaneous report" of her observations, and (3) an "indicator of veracity is the caller's use of the 911 emergency system." *Id.* at 1688-90. The Court found that eyewitness knowledge "lends significant support to the tip's reliability." *Id.* at 1689. In addition, contemporaneous reports "are especially trustworthy because 'substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation.'" *Id.* Finally, because a 911 call can be traced and the identity of the caller determined, "a reasonable officer could conclude that a false tipster would think twice before using such a system." *Id.* at 1690. In a vigorous dissent, Justice Scalia — who was in the majority in *White* — rejected the majority's arguments, fearing that "[a]ll the malevolent 911 caller need do is assert a traffic violation, and the targeted car will be stopped, forcibly if necessary, by the police." *Id.* at 1697 (J. Scalia, dissenting).[8]

---

[8] The majority acknowledged that "this is a 'close case.'" *Navarette*, 134 S. Ct.
(continued...)

Also instructive is the Eighth Circuit's decision in *United States v. Wheat*, 278 F.3d 722 (8th Cir. 2001). There, a 911 caller reported a tan and cream-colored Nissan Stanza or "something like that," whose license plate began with the letters WOC, being driven erratically. The caller provided the location of the vehicle and its direction of travel. A short time later, an officer observed a tan Nissan Maxima, whose license plate began with the letters WOC, stopped at an intersection. The Nissan made a right turn and the officer stopped it immediately, without having observed any incidents of erratic driving. *Id.* at 724-25. Wheat argued that the anonymous 911 call could not give rise to reasonable suspicion sufficient to justify an investigatory stop. After a lengthy discussion of *White*, *J.L.*, and other state and federal decisions addressing this issue, the Court concluded that the 911 call provided the officer with reasonable suspicion to conduct a valid traffic stop. *Id.* at 737.

## B. Analysis

As the Supreme Court has recognized more than once, determining whether an anonymous 911 call provides reasonable suspicion to conduct an investigatory stop is often a "close case." Each case is fact intensive, and the Court must consider "the totality of the circumstances — the whole picture" in determining whether reasonable suspicion exists. *Navarette*, 134 S. Ct. at 1687 (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)).

First, I note that this case does not involve the kind of predictive behavior which, according to the Court in *J.L.*, was "essential" to the Court's decision in *White*. *J.L.*, 529 U.S. at 271. In *White*, the caller stated that a woman would be leaving a particular apartment at a particular time and drive a particular vehicle to a particular location. The *White* Court concluded the caller's ability to predict the subject's future behavior was

---

[8](...continued)
at 1692.

9

important, "because it demonstrated inside information — a special familiarity with respondent's affairs." *White*, 496 U.S. at 332. This make the tipster more reliable. Here, however, the 911 caller did not provide information which was predictive of the subject's future behavior, or otherwise demonstrate any "inside information" or "special familiarity" with the subject's affairs.

Second, unlike the circumstances in *Navarette* and *Wheat*, the caller in the instant case did not provide information regarding the basis for her claim that the subject was engaged in unlawful activity. In those cases, the caller claimed eyewitness knowledge of the subject's erratic driving, giving rise to a reasonable suspicion of drunk driving. In its brief, the Government asserts that the caller in this case "saw the man with the gun and was describing this to the 911 operator nearly contemporaneously with the event."[9] I have listened to the 911 call repeatedly, however, and the caller does not say she saw the gun or state *how* she knew the subject had a gun. That is, there is no indication she was an "eyewitness" to the gun. Rather, the caller states in conclusory fashion that there was "a man walking with a gun." Similarly, in *J.L.* — where the Court found reasonable suspicion had not been established — the caller "neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L." *J.L.*, 529 U.S. at 271.

Third, in *Navarette* and *Wheat* the 911 callers were contemporaneously describing their observations of erratic driving, which was readily observable to the public, thus "lend[ing] significant support to the tip's reliability." *Navarette*, 134 S. Ct. at 1689. In *Navarette*, the Court focused on the caller making a "contemporaneous report" of her "eyewitness knowledge." *Id.* The *Navarette* Court contrasted the facts in *J.L.*, "where the tip provided no basis for concluding that the tipster had actually seen the gun." *Id.*

---

[9] Government's Brief in Resistance (docket number 9-1) at 7.

10

Similarly, the 911 caller in the instant action does not claim she saw a gun or provide the basis for her claim that the subject was armed.

The anonymous 911 caller in this case did not claim a contemporaneous eyewitness observation of the alleged illegal activity.[10] Instead, the caller claimed "I know he usually like he had a gun in his pocket," without providing the basis for that knowledge. I believe the facts in this case are more akin to those in *J.L.*, where an anonymous caller stated that "a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." *J.L.*, 529 U.S. at 268. Substitute "black station wagon and dreads" for "bus stop and plaid shirt," and the information provided by the caller in this case was almost identical to that provided by the caller in *J.L.* In unanimously concluding that there was no reasonable suspicion to stop and frisk J.L., the Court noted that "[a]ll the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L." *Id.* at 271. Here, the anonymous caller reported that a light-skinned black male with dreads driving a black station wagon was in possession of a gun. She did not explain how she knew about the gun, and did not supply any basis for believing she had inside information. In both cases, authorities had no information regarding the caller, and no information was provided regarding the basis of the tipster's knowledge.

I believe this is a close case. After reviewing all of the facts and circumstances, however, I conclude that the quality and quantity of information provided by the 911 caller in this case did not rise to the level required by the Fourth Amendment to conduct an investigatory stop. Nothing in the *Navarette* case suggests that the Court is turning away

---

[10] To justify the traffic stop, there must be reasonable suspicion that "criminal activity is afoot." Here, the Government argues that there was reasonable suspicion to believe the person described in the 911 call was "knowingly carr[ying] or transport[ing] in a vehicle a pistol or revolver," in violation of Iowa Code § 724.4(1).

from its unanimous decision in *J.L.*, entered just 15 years ago. Because I believe the facts in this case are virtually indistinguishable from those in *J.L.*, I believe the motion to suppress should be granted.

## V. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the Motion to Suppress (docket number 7) filed by the Defendant be **GRANTED**. The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on August 12, 2015.*

DATED this 10th day of September, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA